# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| QFO Labs, Inc.,<br><br>               Plaintiff,<br><br>v.<br><br>Parrot, Inc., Parrot S.A., and Parrot Drones, S.A.S.,<br><br>               Defendants. | Case No. 16-cv-3443 (JRT/HB)<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Bryan R. Feldhaus and Phillip A. Cole, Lommen Abdo, PA, 1000 International Centre, 920 Second Avenue South, Minneapolis, MN 55402, and Charles H. De La Garza, The Law Offices of Chaz De La Garza, 900 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for QFO Labs, Inc.

Grant D. Fairbairn and Katherine J. Rahlin, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, and Matthew A. Traupman and James M. Glass, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, New York, NY 10010, for Parrot, Inc.

HILDY BOWBEER, United States Magistrate Judge

      This matter is before the Court on Defendant Parrot, Inc.'s Motion to Dismiss or, in the Alternative, Transfer or Stay [Doc. No. 14].[1]  The matter has been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636 and District of

---

[1]  At the time this motion was filed, Parrot S.A. and Parrot Drones, S.A.S., had not yet been served and therefore did not join the motion to dismiss.  Since then, QFO has filed a letter claiming they have been properly served under the Hague Convention in view of the recent decision of the United States Supreme Court in *Water Splash, Inc. v. Menon*, No. 16-254 (U.S. May 22, 2017) [Doc. No. 55].  The Court does not address for purposes of this motion whether such service was proper.

Minnesota Local Rule 72.1(a) [Doc. No. 31].  For the reasons set forth below, the Court recommends granting the motion and dismissing QFO's claims.

## I.      Background

### A.      Relationship Between the Parties

Plaintiff QFO Labs, Inc. ("QFO") is a corporation organized under the laws of Delaware with its principal place of business in Bloomington, Minnesota.  (Compl. ¶ 1.) Defendants Parrot S.A. and Parrot Drones, S.A.S. design, develop, and manufacture drones—unmanned aircraft guided by remote control.  Both companies are organized under the laws of France with their principal place of business in France.  (Compl. ¶¶ 2-3 [Doc. No. 1]; Traupman Decl. Ex. 1 ¶¶ 4-5 (Delaware Compl.) [Doc. No. 17].) Defendant Parrot, Inc. is a New York corporation with its principal place of business in California.  (Compl. ¶ 4; Traupman Decl. Ex. 1 ¶ 6.)  Parrot, Inc., maintains that it alone is responsible for marketing and selling drone products in the United States (Mem. Supp. Mot. Dismiss at 4 [Doc. No. 16]), although the Complaint is not specific as to the roles of the various entities.[2]

As early as August 2014, QFO informed Parrot that their drone products infringed the asserted patents.  (Pederson Decl. ¶ 18 [Doc. No. 25-1].)  QFO sent Parrot copies of the asserted patent, U.S. Pat. No. 7,931,239 ("the '239 patent"), and the pending claims of the patent application that subsequently issued on July 7, 2015, as the 9,073,532 patent

---

[2]  The Court will refer to the Parrot entities collectively as "Parrot" where it is describing events involving more than one entity or where it is not clear from the record which specific entity or entities were involved.  The Court will distinguish among the Parrot entities where that distinction is important for purposes of this motion.

("the '532 patent"). (Compl. ¶ 12; Traupman Decl. Ex. 1 ¶ 16.) In December 2014, QFO

sent Parrot a claim chart illustrating how one of the drones infringed claims of the '239

patent. (Compl. ¶ 23.) Parrot denied infringement, but negotiated with QFO about a

possible licensing or business arrangement. (Traupman Decl. Ex. 1 ¶¶ 17-19.) These

negotiations occurred throughout 2015 and 2016. In October 2015, the parties entered

into a nondisclosure agreement to discuss the patents, which established that the parties

expressly contemplated the possibility of litigation regarding these patents. (Pederson

Decl. ¶ 18.)

        In January 2016, QFO sent a proposed draft license agreement to Parrot.

(Pederson Decl. ¶ 18.) In discussions surrounding the draft license, QFO informed Parrot

that it would pursue other options if a resolution was not reached. (Pederson Decl. ¶ 18.)

        In April 2016, the parties met in person, and Parrot invited a third-party, France

Brevets, a French sovereign investment fund dedicated to international patent licensing,

to discuss licensing. (Pederson Decl. ¶ 18.) QFO was considering a license, but

demanded compensation for past infringement. (Pederson Decl. ¶ 18.) It informed Parrot

that it would pursue other options if a resolution could not be reached. (Pederson Decl.

¶ 18.) In May 2016, Parrot provided QFO with an offer from France Brevets "to

purchase the '239 and '532 patents for future licensing arrangements," but the offer did

not address compensation for past infringement. (Pederson Decl. ¶ 18.) In the following

three months, QFO and counsel for the Parrot entities communicated on "various

questions and concerns regarding the parties' discussions," but QFO did not formally

respond to that proposal. (Pederson Decl. ¶ 18.)

## B.    Legal Proceedings Between the Parties

On August 8, 2016, three months after Parrot forwarded to QFO the France Brevets proposal, Parrot, Inc., Parrot S.A., and Parrot, S.A.S., filed a declaratory judgment action in the United States District Court for the District of Delaware, QFO's state of incorporation, seeking a judicial declaration that the '239 and '532 patents are invalid and that the Parrot entities do not infringe those patents.  (Traupman Decl. ¶ 2; Ex. 1.)  That same day, the Parrot entities filed petitions for *inter partes* review ("IPR") of both patents at the USPTO.  IPR2016-01550; IPR2016-01559.  Two months later, on October 12, 2016, QFO filed this patent infringement suit in this District, asserting the '239 and '532 patents against all three Parrot entities.

Because the IPR petitions and Delaware action were filed concurrently, the automatic stay provisions of 35 U.S.C. § 315(a)(2) were triggered.  The Honorable Gregory Sleet accordingly stayed the Delaware action.  (Feldhaus Decl. Ex. 2 [Doc. No. 25-3].)  After QFO filed this action for infringement, Judge Sleet lifted the stay.  (*Id.*)

Parrot, Inc., now moves for dismissal or transfer of the Minnesota action on the ground that the declaratory judgment action in Delaware was the "first-filed" action, and therefore takes precedence over the subsequently filed action here.

## II.    Legal Standard

The 'first-filed rule' is "a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions."  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).  Where

"two actions that sufficiently overlap are filed in different federal district courts," the later action should be stayed, dismiss, or transferred to the forum of the first-filed action. *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013). Indeed, a "first-filed action is preferred, even if it is declaratory, 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.'" *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) *abrogated by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).[3] That said, the first-filed rule is not absolute and "[t]he trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency, as in any issue of choice of forum." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). Generally speaking, however, a court may decide not to hear a first-filed declaratory judgment only where "sound reason [] would make it unjust or inefficient to continue the first-filed action." *Id.* (quoting *Genentech*, 998 F.2d at 938).

---

[3] QFO argues that *Genentech* was overruled by the United States Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995). However, *Genentech* was overruled only on the issue of whether a district court's decision to stay a declaratory-judgment action in favor of parallel state-court litigation should be reviewed *de novo* or with some deference. The Supreme Court did not overrule or question the holding of *Genentech* regarding how district courts should apply the first-filed rule in the first instance. Accordingly, *Genentech* remains good law with respect to how the first-filed rule should be applied in patent cases. *Taylor Corp. v. Microthin.com, Inc.*, No. 01–762, 2001 U.S. Dist. LEXIS 24422, 2001 WL 1640063, at *2 (D.Minn. Sept. 11, 2001). *See Sealing Sys., Inc. v. Adaptor, Inc.*, No. 10-cv-0835 (PJS/AJB), 2010 WL 3000036, at *2 (D. Minn. July 22, 2010).

Application of the first-filed rule is governed by Federal Circuit law, not regional circuit precedent. *Serco Servs.*, 51 F.3d at 1038. The Federal Circuit has identified several "convenience factors" to be considered in determining whether to make an exception to the first-filed rule, including whether the earlier suit was anticipatory, the convenience and availability of the witnesses, whether jurisdiction exists over the parties in one or both forums, whether there was forum-shopping, the possibility of consolidation with related litigation, the real party in interest, and other considerations related to justice. *Futurewei Techs.*, 737 F.3d at 704; *Micron Tech., Inc.*, 518 F.3d at 904. A trial court must weigh the factors in such cases "as for any other transfer motion." *Micron Tech., Inc.*, 518 F.3d at 904.

## III.    Discussion

The parties do not dispute that the Delaware declaratory judgment action was filed two months before the infringement action in this District. Nor do they seriously dispute that the underlying issues in the two actions are virtually, if not entirely, identical. The named parties are the same. Both actions involve the '239 and '532 patents and Parrot's drone products.[4] The Court will therefore analyze the convenience factors in determining whether sound reason exists for declining to give priority to the first-filed action.

---

[4] This remains true even if one takes into account QFO's Amended Complaint [Doc. No. 50], which adds allegations that Defendants also infringe of a recently-issued related patent. During the hearing on this motion, counsel for Parrot, Inc., represented it intended to amend its claims of noninfringement in the Delaware action to include that patent when it issued.

## A.     Anticipatory Suit Doctrine

QFO argues, among other things, that the Court should not dismiss or transfer this later-filed action because the first-filed action in Delaware was anticipatory.  While the Federal Circuit has not explicitly defined an "anticipatory suit," one district court analyzing Federal Circuit precedent has stated that "[a] suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent."  *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998).  Commentators have recognized the tension between the anticipatory suit doctrine and the requirements for filing a declaratory judgment action. *See* Aaron Frankel & Nobumasa Hiroi, *Patent Law's Goldilocks Rule: Anticipatory Suit Exception to the First-to-File Rule*, American Bar Association (Feb. 7, 2017), http://www.americanbar.org/publications/litigation-committees/intellectual-property/articles/2017/patents-laws-goldilocks-rule-anticipatory-suit-exception-first-to-file-rule.html ("[J]ust as Goldilocks searched for porridge that was neither too hot nor too cold, to meet the actual controversy requirement and survive a motion to dismiss under the anticipatory suit doctrine, accused infringers must show that the controversy is sufficiently immediate but was not filed in anticipation of imminent litigation."). What is clear is that the analysis of whether a first-filed declaratory judgment action is anticipatory, and whether in such a case priority should be given to the later-filed lawsuit, is a fact-intensive one.  In general, however, declaratory judgment actions that have been found anticipatory have typically been filed just before the expiration of a date-certain

deadline imposed by the patent owner, by which deadline the accused infringer has been told it must respond or the patent owner will file suit.

For example, in *Serco Servs.*, the patent holder sent a letter to the accused infringer on December 23, 1992, stating the accused infringer's product was infringing. 51 F.3d at 1037-38. The patent holder stated that if it did not receive a response by the February 1, 1993, it would take legal action to stop infringement. *Id.* at 1038. The accused infringer responded on January 29, 1993, setting forth its conclusion that its product did not infringe. *Id.* The patent holder again sent a letter on September 8, 1993, reiterating its assertion that the accused infringer infringed the patent and asked for a response by September 20, 1993. *Id.* Rather than responding by that date, however, the accused infringer filed a declaratory judgment action in the Northern District of Texas on September 17, 1993. *Id.* Three days later, on the deadline, the accused infringer sent a letter to the patent holder stating that it did not believe its product infringed the patent; the patent holder filed suit the same day. *Id.* The District Court found the declaratory judgment action to be anticipatory, and the Federal Circuit affirmed, holding that finding was not an abuse of discretion. *Id.* at 1039-40. *See also*, *e.g.*, *In re Foundations Worldwide, Inc.*, 542 F. App'x 998 (Fed. Cir. 2013) (unpublished) (holding the district court did not abuse its discretion by dismissing as anticipatory a first-filed declaratory judgment action on the ground that the accused infringer was "claiming to pursue a non-legal resolution, [while] they were preparing an anticipatory filing," where one day before the deadline set by the patent owner, the accused infringer filed a declaratory judgment action and informed the patent owner by phone, and the patent holder filed suit

hours later in another district); *Woodbolt Distribution, LLC v. Nat. Alternatives Int'l, Inc.*, No. CIV.A. 11-1266 GMS, 2013 WL 247041, at *1 (D. Del. Jan. 23, 2013) (first-filed declaratory judgment action was anticipatory when the accused infringer filed the action hours before the parties were scheduled to participate in a conference call regarding the infringement allegations); *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1191 (C.D. Cal. 2006) (first-filed declaratory judgment suit was anticipatory where accused infringer filed suit before the deadline established by the trademark holder as the date it would cease negotiations and file an infringement action).

By contrast, in *Trustco Bank v. Automated Transactions LLC*, 933 F. Supp. 2d 668, 671 (D. Del. 2013), the patent owner had threatened suit against the accused infringer several times, and had sent a cease-and-desist letter on February 24, 2012. *Id.* The parties negotiated from that date until the accused infringer filed a declaratory judgment action in Delaware. *Id.* Hours later the patent owner filed its infringement suit in New York. *Id.* at 671-72. The court found there was no evidence the accused infringer delayed the negotiations, and the declaratory judgment action was not anticipatory. *Id.*

But even where the record supports a finding that a suit was anticipatory, the Federal Circuit has emphasized that such a finding is not dispositive of, but is only a factor in, the decision whether to give preference to a first-filed case. In *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1343 (Fed. Cir. 2005), the Federal Circuit found that the district court abused its discretion when it dismissed a first-filed case based solely on a finding that the suit was anticipatory. In that case, the parties negotiated about a

possible licensing agreement from 1997 through 2001. *Id.* at 1343-44. Eventually, the patent owner gave the accused infringer an ultimatum, "warning that December 15 was the deadline to pay." *Id.* Four days before the deadline, the accused infringer filed a declaratory judgment action in the Northern District of California. *Id.* The individual patent owner did not file an infringement action in another court, but rather filed a motion to dismiss for failure to comply with the Declaratory Judgment Act on the ground that the suit was anticipatory, or in the alternative to dismiss or transfer the lawsuit for improper venue. *Id.* The district court granted the motion to dismiss, finding the suit was anticipatory, and did not reach the grounds relating to venue. *Id.* at 1345. The Federal Circuit found the district court abused its discretion by focusing entirely on the anticipatory nature of the suit and failing to consider other factors, including "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.* at 1348.

In this case, QFO identifies several facts that it argues show the Delaware action was anticipatory. First, QFO faults Parrot for failing to inform QFO and France Brevets that it was stopping the licensing negotiations and planning to file the declaratory judgment action. QFO argues that filing the declaratory judgment without prior notice to QFO or France Brevets shows that the Delaware action was intended to preempt infringement litigation by QFO. However, as the district court observed in a case cited by QFO, a declaratory judgment action "could have simply been brought in an effort to gain an advantage during settlement discussions: a discourteous act, but one not

proscribed by the anticipatory suit doctrine." *Sensus USA Inc v. Badger Meter Inc.*, No. 16-CV-03376-LHK, 2016 WL 5390300, at *4 (N.D. Cal. Sept. 27, 2016).

QFO also argues that Parrot admits in the Delaware complaint that the action was filed to preempt "the imminent threat of of a lawsuit" by QFO. (Traupman Decl. Ex. 1 ¶ 2.) But as already noted, declaratory judgment jurisdiction requires at least an "immediate" controversy, yet that alone does not make it anticipatory, or else the anticipatory suit doctrine would all but swallow declaratory judgment jurisdiction altogether.

Finally, QFO argues Parrot's near simultaneous filing of the Delaware action and its petitions for IPR in the USPTO shows that the Delaware action is anticipatory. While the argument is somewhat unclear, it appears QFO contends the simultaneous filings show Parrot never actually intended to litigate QFO's infringement claims in district court because Parrot knew that pursuant to 35 U.S.C. § 315(a)(2), the declaratory judgment action would be stayed pending IPR. This argument is fallacious for several reasons, however. First, IPR addresses only invalidity, not infringement. 35 U.S.C. § 311. Second, IPR addresses only a subset of types of invalidity, i.e., those under 35 U.S.C. §§ 102 and 103. *Id.* And even for those types of invalidity, IPR addresses only a subset of prior art, i.e., patents and printed publications. *Id.* Finally, 35 U.S.C. § 315(a)(2)(B) provides that the stay will remain in effect only until "the patent owner files a civil action or counterclaim alleging that the petitioner or real party in interest has infringed the patent." Thus, as happened here, and as Parrot must have known would happen, as soon as QFO asserted its own claims for infringement, the stay was lifted.

Therefore, the Court sees nothing in Parrot's decision to both file a declaratory judgment action and to petition for IPR that supports QFO's contention that the former must have been anticipatory.

Taking into account all of the circumstances leading up to Parrot's Delaware declaratory judgment action, the Court concludes the anticipatory suit doctrine does not apply here. The parties began negotiations in August 2014 and continued to negotiate through July 2016. Furthermore, unlike *Foundations Worldwide* and *Elecs. for Imaging*, Parrot did not file shortly before a deadline set by the patent holder. On the contrary, although QFO stated multiple times that it would seek to enforce its rights through legal action, it did not file suit and it did not inform Parrot of a date by which it intended to file suit or even what occurrence or criterion would trigger that decision. After two years of negotiating and threats that it might face a lawsuit at some unknown time in the future, it was reasonable for Parrot to conclude there was a sufficiently immediate controversy, coupled with sufficient uncertainty about when there might be a resolution of that controversy, to file a declaratory judgment action. Moreover, nothing in the record indicates that QFO was prepared to file suit or was intending to do so when Parrot filed the declaratory judgment action. Indeed, it was two months after the Delaware action was filed before QFO filed this action in Minnesota. In short, the facts here do not support the conclusion that Parrot's first-filed action was a jump-start on a race to the courthouse designed to preempt QFO's claims.

Furthermore, as Parrot, Inc., argues in its reply, the same policy reasons that underlie the Declaratory Judgment Act weigh against finding that the Delaware action

was anticipatory.  The parties negotiated for nearly two years, and it was not clear if or when QFO, left to its own devices, would ever have filed an infringement action.  In the meantime, Parrot's business remained under the cloud of accused infringement without any forthcoming resolution.  If on these facts Parrot's Delaware action is anticipatory, it is difficult to imagine a case in which an accused infringer would be able to file a declaratory judgment action that could not also be so characterized.  The Court concludes the Delaware action was not anticipatory and the history of the parties' dealings do not constitute a "sound reason" to except this case from the first-filed rule.

### B.    Jurisdiction Over the Parties

Parrot, Inc., argues not only that there is no "sound reason" to except this case from the first-filed rule, but that there is a compelling reason to adhere to that rule here, namely, that this Court does not have jurisdiction over two of the four named parties, Parrot S.A. and Parrot Drones, S.A.S.  At the time this motion was filed, those entities had not yet been served with the Complaint in this action, and Parrot, Inc., asserts that even if service is effected, they will file a motion to dismiss for lack of personal jurisdiction on the ground that they have conducted no business in Minnesota.

QFO did not address in its memorandum in response to this motion whether this Court has or could exercise personal jurisdiction over the two foreign Parrot entities, even though the case law consistently identifies this as a factor the Court must consider in deciding a motion to dismiss or transfer for improper venue.  QFO's counsel did raise two arguments during the hearing, however.  First, he asserted that personal jurisdiction exists in Minnesota because of a distribution agreement entered into in 2007 by Parrot

S.A. with Best Buy and Circuit City, both Minnesota corporations. Parrot's counsel responded that such an agreement would not be sufficient in any event to support a finding of personal jurisdiction. Furthermore, he pointed out, the agreement had nothing to do with the drone products business, since Parrot S.A. had not yet entered that business. Second, QFO argued that the nondisclosure agreement between QFO and all three Parrot entities had a Minnesota choice-of-law provision. But choice of law does not amount to choice of forum, and nothing in the nondisclosure agreement stated that the parties had agreed to subject themselves to the jurisdiction of a court in Minnesota. Based on the record before it, the Court is not convinced that even if Parrot, S.A.S., and Parrot S.A. are effectively served, they would be subject to personal jurisdiction in this District. For these reasons alone, jurisdictional considerations weigh heavily in favor of deferring to the action filed in Delaware, where there is no question the court can exercise jurisdiction over all four named parties.

But there is yet another reason to be concerned that this District is not the proper venue in view of the domiciles of the parties to the lawsuit. The United States Supreme Court recently held in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, No. 16-341 (May 22, 2017), that under the patent venue statute, 28 U.S.C. § 1400(b), venue is proper only in a defendant's state of incorporation or where it has a "regular and established place of business" and has committed acts of infringement.[5] Parrot, Inc., "is a New York

---

[5] At the time this Court held oral argument, the Supreme Court granted certiorari in *TC Heartland*, but had not yet decided that case. After it released its decision, the parties provided supplemental letters outlining their positions, which the Court considered [Doc. Nos. 53, 55].

corporation with a principal place of business [in] San Francisco." (Compl. ¶ 4.) Neither the Complaint nor the Amended Complaint allege that Parrot, Inc., "has a regular and established place of business" in the state of Minnesota. Accordingly, the allegations in the Complaint do not establish that Minnesota is a proper venue for this patent action against Parrot, Inc.

These considerations therefore strongly favor following the first-filed rule and giving priority to the Delaware action.

### C.    Convenience of the Parties

QFO argues that Minnesota is more convenient for the parties because it would be more expensive for QFO to litigate in Delaware than it would be for Parrot, Inc., and its affiliated entities to litigate in Minnesota. QFO's CEO also stated that all of its officers, employees, and professional advisors are located in Minnesota, along with its principal place of business. (Pederson Decl. ¶¶ 11-13.) QFO asserts that it is a small entrepreneurial company and the Parrot family of businesses is a large publicly traded, multinational conglomerate, with worldwide operations. To support this argument, the CEO of QFO submitted an affidavit that states QFO's annual revenues have averaged less than $1 million per year over the past four years. (Pederson Decl. ¶ 4.) QFO also submitted a 2015 reference document showing the Parrot entities' historical financial information in euros. (Feldhaus Decl. Ex. 6 [Doc. No. 25-7].) The parties do not appear to dispute that Parrot is a larger corporation, although during the hearing, counsel disputed the profitability of Parrot's drones business.

Although Parrot, Inc., does not address whether it is more convenient for it, as the U.S. subsidiary based in California, to litigate in Minnesota or Delaware, it does contend that Delaware is the more convenient forum for the Parrot entities collectively because the two parent companies are based in France, and it is easier to travel from France to Delaware than to Minnesota.

A court may consider "the comparative costs to the parties of litigating in each forum," although this factor is typically analyzed in connection with the interest of justice rather than the convenience of the parties. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997). Regardless, the evidence before the Court as to this factor weighs somewhat in favor of QFO. Parrot, Inc., submitted no documents supporting its statements about the lack of profitability of its drone business, and while there may be fewer flights between France and Minnesota than between France and Delaware, travel to Minnesota would not appear to present a significantly greater burden. Furthermore, it appears the Parrot entities have more resources available for litigation than does QFO. That said, QFO chose to incorporate in Delaware, and several Delaware courts have expressed skepticism over arguments by a party who chooses to incorporate in Delaware and later complains of the inconvenience of litigating there. *Scientific Telecommc's, LLC v. Adtran, Inc.*, No. 15-647-SLR, 2016 WL 1650760, at *1 (D. Del. Apr. 25, 2016); *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 357 (D. Del. 2009); *ADE Corp. v. KLATencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001). Overall, therefore, this factor weighs only slightly in favor of sustaining the Minnesota action.

### D. Convenience of Non-Party Witnesses

QFO argues that the convenience of non-party witnesses favors Minnesota rather than Delaware. However, QFO identifies only one non-party witness. This witness, Peter Spirov, a co-inventor of the '239 and '532 patents, appears to reside in Michigan. (Pederson Decl. ¶ 9.) All of the other identified witnesses are affiliated with the parties themselves. Thus, this factor does not support making an exception to the first-filed rule in favor of the Minnesota action.

### E. Location of Books and Records

QFO also argues that the location of books and records favors a Minnesota forum. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). QFO argues that Parrot's documents are presumably not in Delaware, but rather in its California, Michigan, or France offices. On the other hand, QFO does not and cannot argue that Parrot has any documents in Minnesota. Furthermore, as Parrot points out, most discovery in this day and age will be electronic, so the physical location of the records is immaterial. Thus, this factor does not militate in favor of an exception to the first-filed rule.

### F. QFO's Choice of Forum

QFO argues the Court should give preference to its choice of forum because it is the "natural plaintiff." QFO relies on Eighth Circuit case law in support of this proposition. But in determining whether to apply the first-filed rule in a patent case, it is

17

Federal Circuit law that governs. On one hand, the Federal Circuit has refused to endorse a rule that "would automatically grant the patentee the choice of forum, whether the patentee had sought—or sought to avoid—judicial resolution of the controversy." *Genentech*, 998 F.2d at 937. On the other hand, the Federal Circuit has held that a plaintiff's choice of forum is entitled to less deference where that forum is not its home forum. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (per curiam) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). Therefore, the choice of forum factor does not favor either forum in the Court's consideration of this motion.

### G.     Forum Shopping

QFO presents two arguments related to forum shopping. First, it argues that the Parrot entities are attempting to manipulate venue and as such its desired forum should be discounted. QFO cites *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009). That case is factually distinguishable, however, because in that case, one party moved 75,000 pages of documents from its business headquarters in California to its attorney's office in Texas to argue against transfer. *In re Hoffman-La Roche*, 587 F.3d at 1337. Here, there is no evidence that Parrot attempted to manipulate the facts to skew the factors affecting choice of venue.

QFO next argues that the Parrot entities' choice of Delaware must be suspect because they have no connection to Delaware. If anything, however, this cuts against QFO's argument. Absent such a connection, it would be hard to argue that the Parrot entities hoped to gain an unfair "home court advantage" in Delaware; rather, they chose

18

Delaware because QFO is incorporated there and thus subject to personal jurisdiction in that district.  Furthermore, there is nothing in the record to indicate that the Parrot entities chose to file in Delaware in order to thwart QFO's preferred litigation forum of Minnesota (or even that they knew of such a preference), but even if they had, there is nothing in the case law requiring a declaratory judgment plaintiff to choose its opponent's preferred forum for its action.

In sum, the Court is not persuaded that there has been forum shopping by the Parrot entities, and therefore this factor does not offer a "sound reason" to make an exception to the first-filed rule.

### H.      Interests of Each State

QFO argues that Minnesota has a greater interest in the dispute than Delaware does.  In particular, QFO explains that it has maintained its business in Minnesota because of Minnesota's tax programs, so Minnesota has a greater interest in resolving the dispute.  This argument is incomplete, however.  Presumably QFO incorporated in Delaware because of a preference for that state's corporate laws.  Thus, arguably, Delaware also has an interest in the resolution of this dispute.  This factor does not provide a basis to make an exception to the first-filed rule in this case.

## IV.   Recommendation

For the reasons set forth above, the Court finds no sound reason to make an exception to the application of the first-filed rule for this case.  On the contrary, it finds strong reasons based in jurisdictional and venue concerns to give priority to the first-filed

action in Delaware. In view of those conclusions, the Court respectfully recommends that the action filed in this District be dismissed without prejudice.

The Court recommends dismissal rather than transfer because the legal and factual issues are identical in the Delaware action and this action. Although an additional patent has been raised in the Amended Complaint in this case, nothing prevents that patent from being asserted by counterclaim in the Delaware action.[6] Dismissal of this case is therefore appropriate.[7] *Compare Boston Sci. Corp. v. Kiland*, No. 10-cv-4053 (DSD/JJK), 2011 WL 3035088, at *3 (D. Minn. July 25, 2011) (dismissing an action that was duplicative of a first-filed action) *with Kansas Int'l Ltd. v. Brian Moore Custom Guitars, Inc.*, No. C 08-3120 PJH, 2008 WL 4225450, at *1 (N.D. Cal. Sept. 12, 2008) (transferring instead of dismissing where neither action would dispose of all of the claims in the other).

---

[6] In fact, the parties have agreed that the final decision of the District Court on this motion "would apply equally to the First Amended Complaint" [Doc. No. 51].

[7] In its letter discussing the recent decision in *TC Heartland* (see footnote 5 above), QFO also asks the Court to stay any decision on the motion to dismiss pending a forthcoming motion to consolidate the Minnesota and Delaware actions through the Judicial Panel on Multidistrict Litigation, and then ask that the consolidated actions be litigated in Minnesota. But this is not multidistrict litigation; it is two virtually identical suits involving the same parties, patents, and claims, but filed in different districts. Furthermore, actions consolidated for multidistrict litigation are consolidated only for purposes of coordinating pretrial proceedings; the cases are remanded back to their original districts at the conclusion of those proceedings. 28 U.S.C. § 1407(a). The Court sees no efficiencies to be gained by such consolidation, and certainly none to be gained by staying this action to bring yet another motion. The only question properly before this Court is which of these two mirror-image actions should proceed, and in which district.

Accordingly, based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Parrot Inc.'s Motion to Dismiss or, in the Alternative, Transfer or Stay [Doc. No. 14] be **GRANTED** and this action be **DISMISSED WITHOUT PREJUDICE**.


Dated: May 26, 2017          _s/ Hildy Bowbeer_____
                             HILDY BOWBEER
                             United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.